FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 0 7 2021

KEVIN P. WEIMER Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| [UNDER SEAL],<br>Lucretia Brinson<br>Plaintiff,<br><br>vs.<br><br>[UNDER SEAL],<br>Deloitte<br>Defendant | Case No.:<br>**1:21-CV-4995**<br><br>COMPLAINT<br>[UNDER SEAL] |

COMPLAINT [UNDER SEAL] - 1

U.S.D.C. - Atlanta

DEC 0 6 2021

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

~~JANE DOE~~, et al,
Lucretia Brinson
     Plaintiff,

vs.

DELOITTE, et al,

    Defendant

Case No.:

**1:21-CV-4995**

COMPLAINT
~~[UNDER SEAL]~~

## COMPLAINT

### Introduction

1. Plaintiff, brings action pursuant to Title VII of the Civil Rights Act of 1964, as amended, Age Discrimination in Employment Act, Georgia Age Discrimination Act, GA Code Sec. 34-1-2

### Jurisdiction

2. This Court has jurisdiction over the subject matter of this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq., and the Georgia Age Discrimination Act.

COMPLAINT [UNDER SEAL] - 2

## Venue

3.      Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2); as Plaintiff was employed by Defendant in Georgia at the time of employment, Plaintiff's employment records are maintained by Defendant in this judicial district, and decisions adverse to Plaintiff's employment that are subject of this civil action were made in this judicial district.

## Parties

4.      Plaintiff, an African American female who is at least 40 years old, is a citizen of the United States and a resident of the state of Georgia. At all times relevant to this suit, she was employed with Defendant.

5.      Defendant is a global entity that provides consulting and other professional services throughout the United States and other countries.

## Statement of Facts

6.      After exhausting multiple internal escalation paths to communicate and seek relief for violations of internal public policies and processes and federal and state law, four employees of the Defendant, on behalf of their direct reports, co-workers, and themselves, reluctantly sought help and guidance from the EEOC. Over the past couple of years,

COMPLAINT [UNDER SEAL] - 3

while the Defendant's employees continued to seek internal remedies in accordance with Defendant's published policies and procedures, the EEOC ultimately issued notice letters for the right to sue the Defendant for violations of the law.

7.      Sadly, navigating through corporate internal processes to align with Defendant's espoused organizational values and commitments failed to effectively, collaboratively, and conciliatorily mitigate risks for all parties involves.  Defendant failed to appropriately police itself. Corporate self-regulation failed in this case, especially corporate governance of the employment life-cycle involving the assessment and performance management/measurement tools, processes, and procedures.  This case hopes to humbly encourage the Defendant to remember that employees and their families are more than assets on a balance sheet or other financial statements. Fair, equitable assessment and performance management approaches are foundational to creating a level playing field for all working Americans and essential to driving organizational performance that benefits our economy and the livelihood of all of its citizens.

COMPLAINT [UNDER SEAL] - 4

8.    Plaintiff, an African American female, was a manager with over 30 years of professional experience in managerial positions.

9.    Plaintiff worked in the Human Capital practice and was based out of the Atlanta, GA office.

10.    Plaintiff, began working for Defendant in May, 2013.

11.    Title VII prohibits employers from discriminating against employees with respect to her or his compensation, terms, conditions, or privileges of employment, because of her or his race, color, religion, sex, or national origin.

12.    The Age Discrimination in Employment Act of 1967 provides specific protection for new hires and employees over the age of 40 who are the victims of discrimination because of age.

13.    The Plaintiff has evidence that would permit a reasonable jury to conclude that the Plaintiff's race, sex, age, or other proscribed factor caused adverse employment actions, beginning with the Defendant's hiring decision in 2013 and continuing throughout her employment life-cycle.

14.    Title VII also prohibits employers from retaliating against employees for engaging in the protected activity of opposing an

COMPLAINT [UNDER SEAL] - 5

unlawful employment practice or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing.

15.     The Plaintiff has established a prima facie case of employment discrimination by demonstrating that she (1) is a member of a protected class - African American; (2) is older than 40 years old; (3) met her employer's legitimate employment/job performance expectations; (4) suffered adverse employment action(s); and (4) another similarly situated employee outside of her protected class received better treatment from the Defendant. Plaintiff believes she is a member of a protected class of employees with similar experiences and outcomes.

16.     The Plaintiff also has evidence that the Defendant created a hostile workplace and harassed the Plaintiff and other protected class employees motivated by race, sex, and age or other proscribed factor that were participating in protected activity.

17.     Plaintiff was subjected to conduct and conditions giving rise to harassment by Defendant leadership and other non-supervisory employees that would benefit from displacement of Plaintiff and other protected class employees.

18. The conduct and conditions were not welcomed by Plaintiff or the other protected class employees.

19. The conduct and conditions were incentivized by the fact that Plaintiff and the other impacted employees were in a protected class and participating in protected activity.

20. The conduct was so severe and pervasive that multiple reasonable persons found Defendant's work environment to be hostile and abusive as a result of Defendant's conduct.

21. Plaintiff and other protected class employees suffered adverse "tangible employment action(s)" as a result of the hostile work environment.

22. Defendant leadership and supporting organizations responsible for policy enforcement  knew, or should have known, of the abusive conduct.

23. Several Defendant employee's provided leadership with enough information to raise a probability of harassment in the mind of a reasonable employer, and the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

24.     Unfortunately, Defendant leadership cultivated and encouraged this behavior.

25.     The Defendant also retaliated against the Plaintiff and other protected class employees for engaging in the protected activity of opposing an unlawful employment practice or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing.

26.     Finally, the Plaintiff has evidence that the Defendant's retaliatory motive also caused an adverse employment action(s) that a reasonable jury could draw a causal relationship or link based on timing and circumstances. As the Defendant clearly stated where in the Plaintiff was again sharing the concerns expressed by her direct reports, other colleagues, and herself, "We know that you're a black female over 40 years old."

FIRST CLAIM FOR RELIEF

(Racial Discrimination)

27.     Defendant has engaged in unlawful racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-

16 by engaging in activities that resulted in adverse actions impacting Plaintiff because she is African American.

28.     The effect of the events described above has been to deprive Plaintiff of equal employment opportunities as a result of her being a member of a federally protected class.

29.     The unlawful employment practices described above were willful and intentional.

30.     The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of Plaintiff.

## SECOND CLAIM FOR RELIEF

### (Gender Discrimination)

31.     Defendant has engaged in unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 by engaging in activities that resulted in adverse actions impacting Plaintiff because she is African American woman.

32.     The effect of the events described above has been to deprive Plaintiff of equal employment opportunities as a result of her being a member of a federally protected class.

33.     The unlawful employment practices described above were willful and intentional.

34.     The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of Plaintiff.

### THIRD CLAIM FOR RELIEF

### (Age Discrimination)

35.     Defendant has engaged in unlawful age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et. seq., and the Georgia Age Discrimination Act, by not promoting or providing opportunities for advancement to Plaintiff because she is a member of a protected age group.

36.     The effect of the events described above has been to deprive Plaintiff of equal employment opportunities as a result of her being a member of a federally protected class.

### FOURTH CLAIM FOR RELIEF

### (Retaliation)

37.     At the advent of fully implementing Defendant's redesigned performance management system at or around 2017, Defendant has

engaged in intensified unlawful discriminatory and retaliatory practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 by enabling an perpetuating discriminatory animus and ineffectively executing a corporate governance infrastructure in compliance with federal and state laws and Defendant's published policies.

38.     The effect of the events described above has been to deprive Plaintiff of equal employment opportunities in retaliation for exercising her federally protected rights.

39.     The unlawful employment practices described above were intentional.

40.     The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of Plaintiff.

FIFTH CLAIM FOR RELIEF

(Harassment)

41.     Defendant has engaged in unlawful harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 by engaging in activities that resulted in adverse actions impacting

COMPLAINT [UNDER SEAL] - 11

Plaintiff because she complained about discrimination and protected in protected activity.

42.     The effect of the events described above has been to deprive Plaintiff of equal employment opportunities as a result of her being a member of a federally protected class.

43.     The unlawful employment practices described above were willful and intentional.

44.     The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of Plaintiff.

SIXTH CLAIM FOR RELIEF

(Equal Pay)

45.     Defendant has engaged in violation of The Equal Pay Act of 1963, 29 U.S.C. § 206(d), et. seq., by not paying Plaintiff comparable pay peers based on experience, responsibilities and skills.

46.     The effect of the events described above has been to deprive Plaintiff of equal employment opportunities as a result of her being a member of a federally protected class.

COMPLAINT [UNDER SEAL] - 12

47.     The unlawful employment practices described above were intentional.

48.     The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of Plaintiff.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court:

A. Grant permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which retaliates against employees who complain about discrimination;

B. Order Defendant to institute and carry policies, practices, and programs which provide equal employment opportunities for employees who exercise their federally protected rights to complain about discrimination and which eradicate the effects of its past unlawful employment practices;

C. Order Defendant to make whole Plaintiff by providing appropriate backpay with prejudgment interest, and other

COMPLAINT [UNDER SEAL] - 13

affirmative and equitable relief necessary to eradicate the effects of unlawful employment practices, including but not limited to front pay;

D. Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from unlawful employment practices described above, including but not limited to job search expenses and medical expenses;

E. Order Defendant to make whole Plaintiff by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation;

F. Order Defendant to pay Plaintiff punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined by trial;

G. Order Defendant to pay Plaintiff compensatory damages for its malicious and/or reckless conduct above, in amounts to be determined by trial;

COMPLAINT [UNDER SEAL] - 14

H. Order Defendant to effectively demonstrate compliant corporate governance and employee engagement approaches beyond standard scenario-based training to its officers, managers and employees regarding discriminatory harassment and retaliation in the workplace;

I. Grant such further relief as the Court deems necessary and proper in the public interest; and

J. Award attorney fees in this action.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of facts raised by aforementioned Complaint.

Dated this 6 day of December, year 2021.

Keith Mosley II
Georgia Bar No. 203514
2161 Peachtree Rd #403
Atlanta, Ga 30309
Telephone: 404.725.6181
Keith.mosley@mosley-law.com

COMPLAINT [UNDER SEAL] - 15

NAME                                         OFFICE: Atlanta

## MANAGER AGREEMENT
For Client Service Candidates Being Hired, Promoted or Transferred as Managers, Senior Managers or Other Comparable Management Level Positions with Client Serving Job Titles or Candidates Being Hired, Promoted or Transferred into Shared Services Level 5, 6 or 7 Positions or Other Comparable Management Level Positions with Nonclient Serving Job Titles

In consideration of my promotion within Deloitte Consulting LLP (the "Employer") as a MANAGER and other valuable consideration, I acknowledge and agree that:

## PRELIMINARY MATTERS

1.    Defined Terms. The italicized terms in this Agreement are defined in Exhibit A hereto.

2.    *Pre-existing Agreements or Arrangements.* I warrant and agree that I have listed on Exhibit B all *Pre-existing Agreements or Arrangements.* The Employer expects me to abide by all restrictions or obligations that are contained in such *Pre-existing Agreements or Arrangements* and to avoid involvement, while employed by the Employer, in any matter that could pose a conflict as a result of confidential information or intellectual property obtained by me prior to my *Employment.* I further represent that none of these restrictions or obligations, including those set forth in any non-compete agreements with prior employers, is inconsistent with my acceptance of the Employer's offer of *Employment* or my becoming, and serving as, a MANAGER of the Employer. To the extent applicable and if I am joining the Employer after having served as an employee or official of the United States Government, I further represent that: (1) I have disclosed my prior participation, if any, in any discussions or negotiations with, or decisions to award contracts to, the Deloitte U.S. Firms (as defined in Exhibit A under *Deloitte Entity*) while I was employed by the United States Government; and (2) I had either recused myself or had not played an active role in the applicable United States Government agency's decision to award any contracts to the Deloitte U.S. Firms while I was employed by the United States Government

## PROTECTION OF OUR BUSINESS

3.    Reporting of *Proceedings*. Except as provided by law and except as I have disclosed in writing on Exhibit C to this Agreement, I represent and warrant that I have no *Proceedings* to report. Should I become a subject of any *Proceedings* during my association with the Employer, I agree to immediately report, in writing, all relevant facts to the Chief Talent Officer of Deloitte LLP and the Chief Ethics and Compliance Officer of Deloitte LLP. I understand that my responses are subject to audit and review by the Employer and others in accordance with

applicable professional, ethical, legal, or Employer requirements, rules, regulations, policies, or practices, or other requests.

4.      **Confidentiality.** I acknowledge that, by virtue of my *Employment*, I will acquire and be exposed to, have access to, make use of and/or create *Confidential Information*. Therefore, I agree to hold in trust and confidence all such *Confidential Information*. I will not disclose any such *Confidential Information* to anyone outside a *Deloitte Entity* without the prior written approval of an *Authorized Signatory*, except as required by my authorized duties for the Employer, nor use any such *Confidential Information* for any purpose other than for the benefit of a *Deloitte Entity*. However, I understand that this paragraph does not prohibit the reporting of violations of federal, state or local law or regulation to, or discussing any such possible violations with, any governmental agency or entity authorized to receive such information, such as the Equal Employment Opportunity Commission, the Securities and Exchange Commission, the Occupational Safety and Health Administration, or the Department of Defense, including by initiating communications directly with or responding to any inquiry from or providing testimony before any such agency or entity, or to otherwise make disclosures protected under whistleblower provisions of federal law or regulation. I further understand that I do not need prior authorization to report or disclose violations of federal law or regulation to any such governmental agency or entity and I am not required to notify the Deloitte U.S. Firms that I have made such reports or disclosures.[1]

5.      **Third Party Information and Property.** I agree that during my *Employment*, I shall not use or disclose any confidential information or intellectual property of any former employer or other person or entity without the prior written authorization of such employer, person or entity and the prior written consent of an *Authorized Signatory*. If I were to use or disclose any such confidential information or intellectual property without prior consent, and any of the *Deloitte Entities* become the subject of any claim from a third party regarding such unauthorized use or disclosure, I agree to hold harmless and indemnify the *Deloitte Entities* for any legal defense costs and/or damages related to any such claim.

6.      **Competing Activities and Conflict of Interest.** During the period of my *Employment* I will not, directly or indirectly, participate in or in any way render services or assistance to any business that is or may be competitive with a *Deloitte Entity*, whether or not for compensation, or engage in any conduct which might result in, or create the appearance of using my position for private gain or other than for the benefit of a *Deloitte Entity*, or otherwise create a conflict, or the appearance of a conflict, of interest with a *Deloitte Entity*. Such conduct shall include, but not be

---

[1] Notice of Immunity Under Defense of Trade Secrets Act: Pursuant to 18 U.S.C. § 1833(b), nothing in this agreement shall be interpreted to expose me to criminal or civil liability under Federal or state trade secret law for disclosure, in confidence, of trade secrets (i) to Federal, state, and local government officials, directly or indirectly, or to an attorney, solely for the purpose of reporting or investigating a suspected violation of law, or (ii) in a complaint or other document filed in a lawsuit or other proceeding, provided the filing is made under seal and otherwise protected from disclosure except pursuant to court order. If I file a lawsuit for retaliation for reporting a suspected violation of law, I may disclose trade secrets to my attorney and use the trade secret information in a court proceeding, provided that I file any document containing the trade secret under seal and I do not disclose the trade secret, except pursuant to court order.

limited to, having an undisclosed financial interest in any vendor or supplier of a *Deloitte Entity*, accepting payments of any kind or gifts other than of a nominal value from vendors, clients or suppliers, or having an undisclosed relationship with a family member or other individual who is employed or associated with any entity in active or potential competition with a *Deloitte Entity*, and which creates a conflict of interest. I represent and warrant that I am not currently aware of any present or past violation of this provision.

7.    **Authorization to Access *Systems* and *Electronic Communications*.** I understand that while employed with a *Deloitte Entity*, I will use and have access to the *Systems*. I also acknowledge that a *Deloitte Entity* has the right at any time to access, retrieve, delete, monitor, examine, use and/or disclose my *Electronic Communications* and information from (or about) me and the content, without notice to me, and that such *Electronic Communications* are considered part of a *Deloitte Entity's* business and client records and are not to be considered private or personal to me or any other *Personnel*. I further acknowledge that this right extends to *Electronic Communications* transmitted for either a business or personal purpose. I agree that I am authorized to access the *Systems* only for approved business purposes and occasional personal use if such use does not interfere with my work responsibilities and other required business activities, business operations, or *Systems* performance. However, I also acknowledge that such occasional personal use does not create an expectation of privacy as to any of my personal *Electronic Communications* and, as such, are *Deloitte Property*. I further acknowledge that I am not authorized to access the *Systems* for personal gain or any illegal or unethical use. I agree that under no circumstances am I authorized to access any of the *Systems* for the purpose of obtaining *Deloitte Property* for a competitor of a *Deloitte Entity*, transmitting *Deloitte Property* to me (*e.g.*, emailing *Confidential Information* to my personal email address) or to a third party for purposes other than furthering the business objectives of a *Deloitte Entity*. I am not authorized to access the *Systems* to download a *Deloitte Entity's Confidential Information* or other *Deloitte Property* to removable media such as a CD Rom, disk or thumb drive other than as authorized for furthering the business objectives of a *Deloitte Entity*. I agree, upon request from a *Deloitte Entity* that is based on its reasonable belief that a) I may have *Deloitte Property* in electronic form in my possession, custody or control or b) I may not be in compliance with one or more professional, ethical, and Employer requirements, rules, regulations, policies and practices, to allow a *Deloitte Entity* to inspect any of my personal or home computers, including smart phones, or tablet computers, or any device, media or location capable of storing electronic data, to determine whether any *Deloitte Property* resides on such computers, devices, media or locations and to permit a *Deloitte Entity* to remove such *Deloitte Property*.

8.    **Ownership of *Works*.**

a. I agree that the Employer owns all rights, title and interest in and to all *Works*.

b. I agree that all *Works* are deemed works made for hire under the United States copyright laws or equivalent laws of any applicable foreign jurisdiction, and all *Intellectual Property Rights* therein vest automatically in the Employer upon creation of the *Works*. I agree that, to the extent any *Work* is held not to be a work made for hire, I hereby irrevocably assign all *Intellectual Property Rights* in the *Work* to the Employer. I agree to keep and maintain adequate written records of all *Works* which shall be available to and remain the sole property of the Employer

and, upon request of the Employer, to disclose any *Works* in order to permit the Employer to claim rights to which it may be entitled.

Notwithstanding the foregoing, I acknowledge that the Employer from time to time may have agreements with other persons or with the U.S. Government, or agencies thereof, which impose obligations or restrictions on the Employer regarding *Works*. I agree to be bound by all such obligations and restrictions and to take all action necessary to discharge the obligations of the Employer thereunder.

c. I will at all times, even after termination of my *Employment*, do whatever the Employer reasonably requests of me, at the Employer's expense, to document the assignment of any *Works* to the Employer or to assist the Employer in pursuing, renewing, extending or assigning any *Intellectual Property Rights*, and otherwise perfecting, protecting and enforcing said *Intellectual Property Rights* in, any *Works*. I agree that, as between me and the Employer, the Employer shall be the sole author, inventor, and owner of all such *Works* and *Intellectual Property Rights* therein throughout the world, and that the Employer shall have the sole right to seek copyright registrations, patents or trademark registrations, including all extensions and renewals thereof. I also hereby agree that I waive all moral rights in any *Works*.

d. During a 12 month period after termination of my *Employment*, I agree that any *Intellectual Property* I create or conceive that results from and is related to any work assigned to or performed by me for the Employer, or that was created using *Deloitte Property*, is a *Work* that is subject to Paragraph 8(b) above. For purposes of clarification, the foregoing provision is in addition to, and not in limitation of, any rights and remedies the Employer may have under the applicable laws protecting *Intellectual Property* of the *Deloitte Entities*.

9.      *Pre-existing Creations; Personal Creations.* My obligations in Paragraph 8 do not apply to *Pre-existing Creations* and *Personal Creations*. I warrant and agree that I have listed on **Exhibit B** all *Pre-existing Creations*. I acknowledge and agree that I will not assert any ownership rights against the *Deloitte Entities*, or their respective clients, with respect to any *Pre-existing Creations* unless they appear on **Exhibit B**, and **Exhibit B** has been accepted and agreed to by an *Authorized Signatory* who has signed at the bottom of such **Exhibit B**. I further agree that I shall not use any *Pre-existing Creations* or *Personal Creations* in connection with my *Employment* without the prior written consent of an *Authorized Signatory*. To the extent that I use any *Pre-existing Creations* or *Personal Creations* in connection with my *Employment*, I agree that, except as otherwise provided in a written agreement executed by me and the Employer, I hereby grant to the Employer an irrevocable, royalty free, perpetual, fully paid up, transferable, sublicensable license to use, reproduce, distribute, display, perform, modify and create derivative works of and otherwise exploit such *Pre-existing Creations* or *Personal Creations* for any purpose including, but not limited to, client engagements.

10.     **Post-*Employment* Restriction re: Clients.** I acknowledge that, because of the nature of my work for a *Deloitte Entity*, my solicitation of certain clients related to my work for a *Deloitte Entity* would necessarily involve the unauthorized use or disclosure of *Confidential Information*, and the proprietary relationships and goodwill of the *Deloitte Entities*, and, in the case of my serving of certain clients, could compromise the full compliance of the Employer or another

*Deloitte Entity* with *Rule 2-01*, including, but not limited to, the implementation of certain provisions of the Sarbanes-Oxley Act of 2002, or other independence-related requirement of a regulatory body. Accordingly, for a period of one year following the termination of my *Employment* for any reason, I will not, directly or by assisting others, solicit or attempt to solicit any business from any client or prospective client of a *Deloitte Entity* with which I had material contact and to which I provided (or participated in a proposal to provide) services. This restriction is limited to services which are similar to the kinds of services I provided or proposed to provide to the clients or prospective clients of the Employer or another *Deloitte Entity* during the two-year period prior to termination of my *Employment*.

11.    Exceptions to Post-*Employment* Restriction re: Clients. I understand that the obligations of Paragraph 10 will not apply for a period of three (3) years after my start date or the date of my promotion or transfer to clients of a *Deloitte Entity* and/or certain specified kinds of services rendered to such clients that meet all of the following criteria: (a) are personal clients of mine who came to a *Deloitte Entity* solely to avail themselves of certain specified kinds of services rendered by me and only as a result of my own independent recruitment efforts, which a *Deloitte Entity* neither subsidized nor otherwise financially supported as part of a program of client development, (b) are listed on Exhibit D expressly by name with respect to client and with sufficient specificity with respect to the kinds of service(s) that I will be permitted to render, and (c) are accepted and agreed to as to their listing on Exhibit D by an *Authorized Signatory* who has signed at the bottom of such Exhibit. I agree that after a period of three (3) years from my start date or the date of my promotion or transfer the Employer will have invested sufficient time, financial support and effort in developing and serving the clients listed on Exhibit D to support the application of the obligations of Paragraph 10 to those clients.

12.    Future Employment with Clients. Except as otherwise provided herein, I understand that I am not prohibited from accepting employment with a client (or an affiliate of such client) of a *Deloitte Entity*. Before entering into substantive discussions with an *Attest Client* regarding any employment opportunity, I acknowledge and agree that during my *Employment* and for five years thereafter I must first notify *Independence* and obtain prior written approval from *Independence*. In addition, before entering into substantive discussions about an employment opportunity with an *Attest Client* for which I was a member of (or consulted with) the audit engagement team in the preceding two years I must first notify and receive approval from *Independence*. I acknowledge and understand that it is the intent of the Employer to interpret and apply this provision (a) in an effort to ensure the full compliance of the *Deloitte Entities* with *Rule 2-01*, including, but not limited to, the implementation of certain provisions of the Sarbanes – Oxley Act of 2002; (b) to serve the public interest; and (c) to protect the legitimate interests of the *Deloitte Entities* or their respective *Attest Clients* under *Rule 2-01* in a manner that is no greater than is reasonably necessary to protect such interests and without being unduly harsh and oppressive to me and my interests in future employment with an *Attest Client*. Further, I acknowledge and agree that because of, among other things, the importance of the *Deloitte Entities* remaining in compliance with applicable independence rules, such approval may be withheld by *Independence* in the event that my employment with an *Attest Client* would, in the view of Deloitte & Touche LLP, be inconsistent with the provisions of *Rule 2-01* or jeopardize the independence of a *Deloitte Entity* with respect to such *Attest Client*.

13.    Restriction re: *Personnel* and Contractors. I acknowledge that, because of the nature of my work for a *Deloitte Entity*, my solicitation of any of its *Personnel* or contractors of the *Deloitte Entities* would necessarily involve the unauthorized use or disclosure of *Confidential Information* or the proprietary relationships and goodwill of the *Deloitte Entities*. Accordingly, during my *Employment* and for one year thereafter, I will not, directly or indirectly, (a) solicit or attempt to solicit, or participate in the solicitation of any attempt to solicit any *Personnel* with whom I had contact or a relationship while at the Employer or another *Deloitte Entity* to leave a *Deloitte Entity*, or to join any firm or business with which I may be or become affiliated, or (b) cause a contractor of a *Deloitte Entity* with whom I had contact or a relationship while at the Employer or a *Deloitte Entity* to cease providing services to, with, or on behalf of the *Deloitte Entity*.

14.    Post-*Employment* Restrictions re: *Deloitte Property*. Upon termination of my *Employment*: (a) I will not use or disclose *Deloitte Property*, including, but not limited to, *Confidential Information* and *Works*, for any purpose; (b) I will not retain or take with me any *Deloitte Property*; (c) I will immediately deliver to a *Deloitte Entity* at any location that it designates, at my expense, within five (5) business days after the termination of my *Employment* or on an alternate date designated by a *Deloitte Entity*, any *Deloitte Property* that I may then or thereafter hold or control; and (d) I agree, upon request from a *Deloitte Entity* that is based on its reasonable belief that I may have *Deloitte Property* in electronic form in my possession, custody or control, to allow a *Deloitte Entity* to inspect any of my personal or home computers, including smart phones, or tablet computers, or any device, media or location capable of storing electronic data, to determine whether any *Deloitte Property* resides on such computers, devices, media or locations and to permit a *Deloitte Entity* to remove such *Deloitte Property*.

## OTHER POST-*EMPLOYMENT* OBLIGATIONS

15.    **Transition of Work and Cooperation.** Upon termination of my *Employment* for any reason, I will cooperate with a *Deloitte Entity* in all matters relating to the completion of pending work and its orderly transfer. I will also cooperate fully with a *Deloitte Entity* in connection with any threat of or actual legal proceeding against a *Deloitte Entity* or any client, customer or licenser of a *Deloitte Entity* arising out of any matter with or of which I had contact or knowledge during my *Employment*.

16.    **Notification of Post-*Employment* Obligations.** I agree that prior to accepting employment or affiliation with another firm or business I will advise such firm or business of my duties and obligations under this Agreement. After my *Employment* ends, I agree that a *Deloitte Entity* shall be permitted to advise any firm or business with which I have accepted an offer of employment or affiliation concerning my duties and obligations under this Agreement.

17.    **Certification.** I agree that during or after my *Employment* I will, if requested, provide written certification in such form as the Employer may require that I have complied with my obligations hereunder, including, without limitation, those obligations set forth in Paragraphs 4, 5, 6, 7, 8, 9, 10, 12, 13 and 14 of this Agreement.

## OUR ENFORCEMENT RIGHTS AND REMEDIES IN THE EVENT OF A BREACH

18.     **Cessation of Severance for Breach.** I acknowledge that any severance payments made to me are, in part, in consideration of my continuing obligations under this Agreement following my separation from *Employment* for any reason. I therefore agree that if the Employer determines, in its sole but reasonable discretion, that I have breached or threatened to breach this Agreement, including, but not limited to, my duties and obligations under the terms and conditions of Paragraphs 4, 5, 6, 7, 8, 9, 10, 12, 13, 14 and 15, the Employer shall be entitled to cease making severance payments to me. The Employer shall resume such payments only in the event of a final non-appealable determination in my favor that no such breach or threatened breach occurred.

19.     **Equitable Relief and Attorney's Fees.** I acknowledge and agree that a breach of this Agreement, including, but not limited to, a breach of my duties and obligations under the terms and conditions of Paragraphs 4, 5, 6, 7, 8, 9, 10, 12, 13, and 14 would cause irreparable harm to the *Deloitte Entities* and that, in addition to other remedies, the Employer on behalf of itself or another *Deloitte Entity* is entitled to a temporary restraining order, an injunction or other equitable relief to prevent any such breach. I also acknowledge that, to the extent permitted by law, a *Deloitte Entity* will be entitled to the payment of the *Deloitte Entities'* reasonable costs and attorney's fees incurred in enforcing this Agreement. I also acknowledge that, to the extent permitted by law, the Employer may request that a court extend the one year period following the termination of my *Employment*, as provided in Paragraphs 10 and 13, to correspond with the period that I participated in activities prohibited by Paragraphs 10 and 13.

20.     **Liquidated Damages: Client Fees.** I agree that the precise amount of damages flowing from a breach under Paragraph 10 would be impracticable or extremely difficult to ascertain in an actual amount. Therefore, I agree that in the event of a breach under Paragraph 10, the Employer shall be entitled to receive, as liquidated damages, payment from me of an amount equal to 50% of all fees received by or owed to me (or any person or entity with which I am associated) in connection with such breach. Such percentage shall be paid within thirty days after each fee payment is received and in respect of all services in connection with such breach during the two years following the termination of my *Employment* for any reason.

21.     **Liquidated Damages: Compensation.** I agree that the precise amount of damages flowing from a breach under Paragraph 13 would be impracticable or extremely difficult to ascertain in an actual amount. Therefore, I agree that in the event of a breach under Paragraph 13, the Employer shall be entitled to receive, as liquidated damages, payment from me of an amount equal to the annual compensation, inclusive of overtime, bonuses, and sales incentives, received by or owed to any person who leaves the Employer in connection with my breach over his or her last twelve months at the Employer. Such amount shall be paid within thirty days from the mailing of a written notice to me advising of the amount due.

22.     **Right of Inspection.** I agree to permit the Employer (or to use my best efforts to enable the Employer) to inspect my books and records (and the books and records of any entity which employs or is associated or affiliated with me), upon request and at reasonable times, to enable the Employer to confirm the calculations described above and to verify compliance with

Paragraphs 10 and 13. The Employer shall keep confidential any proprietary information obtained, except as may be necessary or desirable to enable the Employer to enforce its rights under this Agreement and except as may be required by any statute, court or administrative order to decree or government ruling or regulation.

## MISCELLANEOUS

23.    Governing Law; Choice of Forum; Jury Waiver. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. I further agree to accept service of process from the Employer when that process is either sent to my last known address by certified mail or served by any other means permitted under the law of the state or district in which the Employer may bring an action against me.

24.    Modifications. My obligations hereunder may not be changed or modified, released, discharged, abandoned or terminated, in whole or in part, except by an instrument in writing which expressly refers to and attaches this agreement and is signed by an *Authorized Signatory*.

25.    Severability. Every provision of this Agreement is intended to be severable. If any term or provision is illegal or invalid for any reason whatsoever, such term or provision will be enforced to the maximum extent permitted by law and, in any event, such illegality or invalidity shall not affect the validity of the remainder of the Agreement.

26.    Blue-Penciling. If any court determines that any provision of this Agreement, or any part hereof, or the application of any such provision, or any part hereof, to any person or circumstance is unenforceable or void, such court shall have the power to modify such provision, or any part hereof, to the extent necessary to render it legal and enforceable while preserving its intent, or if such modification is not possible, by substituting therefore another provision that is legal and enforceable and that achieves the same objective.

27.    Waiver. None of my obligations under this Agreement shall be deemed to have been waived by the Employer except by an instrument in writing which expressly refers to and attaches this agreement and is signed by an *Authorized Signatory*. No such waiver shall be deemed to be a waiver of any other or further obligation I have under this Agreement.

28.    Integration. This Agreement, the Employer's employment application, and any documentation promoting me or transferring me to the Employer, contain the entire understanding between me and the Employer or any other *Deloitte Entity* with respect to the subject matter hereof and supersedes all prior representations, warranties, and agreements with respect to such subject matter, and no representations, warranties or other covenants exist with respect to such subject matter that are not contained or expressly referred to herein. Notwithstanding the foregoing, any written agreement between a *Deloitte Entity* and me with respect to the subject matter hereof that was signed by me prior to the effective date of this Agreement shall remain valid and enforceable according to the terms of such agreement with respect to all acts and omissions occurring prior to the effective date of this Agreement. In the event of a conflict between this Agreement and the employment application or any other

document purporting to set forth terms and conditions of my *Employment*, this Agreement will control.

29.     Transfer and Assignment. Unless as the Employer shall otherwise determine, the rights, obligations and benefits of the Employer under this Agreement, including but not limited to those rights and benefits relating to my post-Employment obligations set forth in this Paragraph 29 and in Paragraphs 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17 and 22 above, are transferred and assigned, in whole or in part (as the Employer shall determine) and without the need for my consent or the formality of documentation or prescribed processes, to (a) any *Deloitte Entity* in connection with my transfer to that *Deloitte Entity* or (b) any entity that acquires all or a part of the assets or business of the Employer. All provisions of this Agreement shall inure to the benefit of and be binding upon the respective heirs, executors, administrators, representatives, successors, and assigns of the Employer and me, and any *Deloitte Entity* to which I may transfer during my *Employment*, provided, however, none of my duties or obligations under this Agreement may be assigned or transferred by me to any other person or entity without the Employer's prior written approval of such assignment or transfer. Any purported assignments in violation of this Paragraph 29 shall be null and void.

30.     At Will. Nothing in this Agreement shall create a contract of employment between the Employer and me or a specific term of employment for me. My employment with the Employer is and shall remain "at will", which means that I may resign my employment, or the Employer may terminate my employment, or change my position pay or duties, for any reason or no reason, with or without notice, with or without cause.

31.     Headings. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

I have read the foregoing, understand it, and agree to comply with its terms.

_____                    _____

Signature                                      Date

_____

Print Name

GA

## EXHIBIT A

The definitions below apply to the italicized terms that appear in the Agreement (including the exhibits):

Attest Client – attest client (or an affiliate of such client) of Deloitte & Touche LLP or a *Deloitte Entity*.

Authorized Signatory – a partner, principal, officer or other person who is authorized to sign on behalf of a *Deloitte Entity*.

Confidential Information – any information not generally known to the public, in any *Form*, that (1) relates to the operation of a *Deloitte Entity* or provides the *Deloitte Entities* with a competitive advantage, (2) consists of *PII* or other personal information about *Personnel*, client and other third party personnel, independent contractors, subcontractors, agents, vendors, suppliers or others which the Employer or another *Deloitte Entity* receives in the course of business, and (3) all other information entrusted to the Employer or another *Deloitte Entity* by clients and other third parties. *Confidential Information* includes, but is not limited to, *Intellectual Property*, supplier information, designs, business or marketing plans, forecasts and financial information, tax returns, tax identification numbers, agreements, client or prospective client lists, specific information about clients or prospective clients such as preferences for specific products and services, client or prospective client needs based on financial history and past purchases of services, client or prospective client development plans, specific rates charged to a client or offered to a prospective client and other business or client records. *Confidential Information* also includes, but is not limited to, debit or credit card information, employment applications, organization charts, performance ratings and other personnel records.

Deloitte Entity – the Employer, Deloitte LLP and any corporation, company, partnership, limited liability company or other entity (a) that (i) is owned, directly or indirectly, in whole or in part, by Deloitte LLP (the "Deloitte U.S. Firms"), the Deloitte Touche Tohmatsu verein, Deloitte Global Services Limited, Deloitte Global Services Holdings Limited, Deloitte Touche Tohmatsu Limited ("DTTL") or any member firm of DTTL or affiliate thereof (collectively, the "DTTL Member Firms") or (ii) controls, is controlled by or is under common control with an of the entities listed in clause (i); or (b) in which any *Personnel* participated on its behalf, or carried out any duties with respect to its affairs. For purposes of this Agreement, the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract, or otherwise.

Deloitte Property – *Confidential Information, Systems,* equipment, debit and credit cards issued in connection with my *Employment,* furniture, facilities and any and all other materials owned, licensed or leased by a *Deloitte Entity,* including, without limitation, computerized or electronic

information and all copies thereof in any form or media, created by, furnished to, obtained by or prepared by me in the course of my employment in any capacity.

**Electronic Communications** – all text, audio, video, images, information, data, files and attachments created, displayed, sent, received, posted, accessed or stored, whether deleted or not, by means of the *Systems*.

**Employment** – the nature of my relationship with the Employer or a *Deloitte Entity* when I work as a MANAGER pursuant to this Agreement. Alternatively, and depending on context, *Employment* is the period of time during which this relationship persists.

**Form** – paper, computer disc, USB drive, website; and any other tangible or electronic medium by which information may be stored or accessed; and human memory.

**Independence** – National Office (Independence) of Deloitte LLP.

**Intellectual Property** - works of authorship (including, without limitation, books, articles, data compilations, software and other copyrightable materials), materials, patents, inventions, designs, techniques, methodologies, processes, discoveries, know-how, ideas, trade secrets, moral rights, trademarks and other indicia of origin together with the goodwill therein, and all patent applications, copyright and trademark applications and registrations, and extensions and renewals thereof, throughout the world.

**Intellectual Property Rights** – all rights, title and interest, including copyright, trade secret, patent, trademark, and other intellectual property rights.

*PCAOB* – Public Company Accounting Oversight Board.

**Personal Creations** – *Intellectual Property* that meet all of the following criteria:  (1) it is conceived, developed, and created by me on my own time without using *Deloitte Property* or *Personnel* (during work hours), facilities, *Confidential Information* or *Works* of a *Deloitte Entity*, (2) it is unrelated to the actual or reasonably anticipated business or research and development of a *Deloitte Entity*, and (3) it does not result from any work performed by me and the *Personnel* (during work hours) for a *Deloitte Entity*.

**Personnel** – partners, principals, members, officers and employees of a *Deloitte Entity*.

**PII** – information (excluding business contact information such as an individual's name and one or more of the following: organization name, organizational title, organizational role, business address, business telephone number (including business cell phone number and business email address) relating to an identified or identifiable natural person.  An identifiable natural person is a natural person who can be identified, directly or indirectly, by reference to an identification number or factors specific to his or her physical, physiological, mental, economic, cultural or social identity.  Set forth below is a non-exclusive list of information that constitutes *PII* when such information relates to an identified or identifiable natural person:

- ○ Account number (bank account, credit card, etc.)
- ○ Address
- ○ Biometric identifier
- ○ Certificate or license number
- ○ Date of birth
- ○ Government identifiers (such as social security numbers or driver's license numbers)
- ○ Name*
- ○ Personnel Number
- ○ Photograph or video identifiable to an individual
- ○ Vehicle identifier or serial number
- ○ Other information related to an individual that may directly or indirectly identify that individual (e.g., salary, performance rating, purchase history, call history, etc.)

\* Note: When an individual's name is used with *PII* that is not business contact information, it is included in the definition of *PII*.

**Pre-existing Agreements or Arrangements** – agreements or arrangements that (1) relate to any *Pre-existing Creations*; or (2) may affect my ability to comply with the requirements of this Agreement, including all contractual and other restrictions or obligations with other parties, including any post-employment restrictions and required notifications to the extent applicable under 18 U.S.C. §207 and 48 CFR 3.104-4, that may or will impose limitations on my professional activities during my *Employment* (such as any non-compete agreements with prior employers and the one year ban on lobbying contacts).

**Pre-existing Creations** – any *Intellectual Property* and *Intellectual Property Rights* that were developed or created by me, alone or with others, or otherwise acquired by me, before the period of my employment in any capacity with the Employer, in which I claim any ownership or right.

**Proceedings** – past or pending (1) actual or threatened claims or complaints of, or arising out of service to, present or former clients, (2) regulatory, self-regulatory, disciplinary, administrative, civil or criminal investigations, inquiries, charges, actions, sanctions, alternative dispute resolution proceedings, other proceedings or matters (other than misdemeanors which relate solely to the operation of a motor vehicle) of any kind or nature, in or outside the United States, against me, including criminal proceedings arising out of my provision of professional services, proceedings brought by a professional association, or proceedings involving the Securities and Exchange Commission or the *PCAOB*, or (3) matters of any kind or nature which could adversely affect my association with the Employer or my ability to perform my duties or responsibilities to the Employer, whether set forth in this Agreement or otherwise, or my registration with or licensure by any governmental, quasi-governmental, or other regulatory agency, body or entity, in or outside the United States.

**Rule 2-01** – Securities and Exchange Commission Rule 2-01 of Regulation S-X.

Systems – the communications systems or any part of such systems that a *Deloitte Entity* owns, licenses or operates and approves for use, including, but not limited to, e-mail, text messaging, Lotus Notes, Deloitte Online (eRoom), instant messaging, local area network, wide area network, Intranet (e.g., DeloitteNet, DeloittePeopleNetwork), Internet, extranet, collaborative tools (e.g., blogs, wikis), computers (laptop, desktop, or tablet), servers, air cards, Personal Digital Assistants, cell phones, telephones, smart phones, voicemail, or any device, media or location capable of storing electronic data.

Works - all *Intellectual Property,* in any *Form,* created by me, alone or with other others, during the period of my *Employment* that (1) is created within the scope of my *Employment;* (2) relates in any manner to the actual or anticipated business, research, or development of a *Deloitte Entity;* (3) results from any work assigned to or performed by me, alone or with others, for the Employer; or (4) is created with the use of *Deloitte Property.*

GA

## EXHIBIT B

### *Pre-existing Creations; Pre-existing Agreements or Arrangements*

I understand and agree that the Employer makes no attempt to verify my claim of ownership to any of the *Pre-existing Creations* listed, and makes no admission that any *Pre-existing Creations* listed are owned by me.

**Title**                              **Date**                              **Brief Description**


___ No *Pre-existing Creations, Pre-existing Agreements or Arrangements*

_____                    _____

Signature                                  Date

_____

Name (Print)



ACCEPTED AND AGREED TO:
**DELOITTE CONSULTING LLP**

By:    _____
       Signature

Its:   *Authorized Signatory*

                                           _____
                                           Date

An *Authorized Signatory*'s signature is required only if *Pre-existing Creations* or *Pre-existing Agreements or Arrangements* are listed pursuant to Paragraphs 2 and 9 of this Agreement. The signature of an *Authorized Signatory* indicates his or her judgment made in light of Paragraph 2 that *Pre-existing Creations*, if any, are described and explained in sufficient detail so that the likelihood of confusion between the **MANAGER**'s *Pre-existing Creations* and the *Intellectual Property* of a *Deloitte Entity* can be avoided or minimized in the future and further indicates that the *Pre-existing Agreements or Arrangements* have been obtained and reviewed and that the *Authorized Signatory* is satisfied that such *Pre-existing Agreements or Arrangements* will not interfere with the **MANAGER**'s ability to comply with the requirements of this Agreement.

UA

## EXHIBIT C

### *Proceedings*

[none, unless otherwise specified]

My signature below certifies that to the best of my knowledge, the information I have provided above, pursuant to Paragraph 3, is complete and accurate.

| | | |
|---|---|---|
| Signature | Name (Print) | Date |

## EXHIBIT D

## Exceptions to Post-*Employment* Restrictions: re: Clients

[none, unless otherwise specified]

As specified in Paragraph 11, I agree that after a period of three (3) years from my start date or the date of my promotion or transfer, as the case may be, the Employer will have invested sufficient time, financial support and effort in developing and serving the clients listed on Exhibit D to support the application of the obligations of Paragraph 10 to those clients.

Name of Client                                         Specified Kind of Services(s) Permitted

ACCEPTED AND AGREED TO:
**DELOITTE CONSULTING LLP**

By:    _____
          Signature

Its:    *Authorized Signatory*

                                                          _____
                                                                            Date

An *Authorized Signatory*'s signature is required only if information is provided pursuant to Paragraph 11 of this Agreement. The signature of an *Authorized Signatory* indicates his or her judgment that criteria in Paragraph 11 have been fully satisfied, the clients listed have been properly identified, and the kinds of services permitted have been described with sufficient specificity.

EEOC Form 161 (11/2020)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:                                                              From:    **Atlanta District Office**
                                                                          **100 Alabama Street, S.W.**
                                                                          **Suite 4R30**
                                                                          **Atlanta, GA 30303**

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
|  | Paul Chung, Investigator | (404) 562-6858 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Derick Newton**  Digitally signed by Derick Newton
Date: 2021.08.18 12:54:19 -04'00'
For

Enclosures(s)

**Darrell E. Graham,**                                     (Date Issued)
**District Director**

cc:    **Jeffrey Wiener, Esq.**
       **Counsel**
       **DELOITTE**
       **1221 Avenue Of The Americas**
       **New York, NY 10020**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than** <u>2 years (3 years)</u> **before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request** <u>within 6 months</u> **of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA<br>☒ EEOC | |

_____ and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| ▓▓▓▓▓▓▓ | ▓▓▓▓▓▓ | ▓▓▓ |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| ▓▓▓▓▓▓▓ | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **DELOITTE CONSULTING** | **500 or More** | **(404) 631-2000** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 191 Peachtree St Ste 2000, Atlanta, GA 30303 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **08-01-2018**   Latest: **11-18-2019**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

I believe that I have been discriminated against because of my sex (female), race (African-American),

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| ▓▓▓▓▓▓ | NOV 18 2019 |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

*State or local Agency, if any*                                                                and EEOC

and age, and retaliated against for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended.

I believe that a class of minority employees have been discriminated against because of their race, and retaliated against for participating in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY -- *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | NOV 18 2019 |

strict Office
ma Street, S.W.
)
A 30303

ATLANTA METRO  301

·7 SEP· 2021   PM 11·1



To:



30144~602066

# United States Post Office Shipping Times for First Class Mail

Home     Post Office Delivery List     How Long by State     First Class Mail Timeline     State Abbreviations

## Below is a list of approximate delivery times for First Class mail that is sent from Georgia (FL).

| Mailed To | Mailed From | Days |
|---|---|---|
| Alabama AL | Georgia | 2-7 |
| Alaska AK | Georgia | 2-7 |
| Arizona AZ | Georgia | 2-7 |
| Arkansas AR | Georgia | 2-7 |
| California CA | Georgia | 2-7 |
| Colorado CO | Georgia | 2-7 |
| Connecticut CT | Georgia | 2-7 |
| Delaware DE | Georgia | 2-7 |
| District of Columbia DC | Georgia | 2-7 |
| Florida FL | Georgia | 2-7 |
| Georgia GA | Georgia | 1-2 |
| Hawaii HI | Georgia | 2-7 |
| Idaho ID | Georgia | 2-7 |
| Illinois IL | Georgia | 2-7 |
| Indiana IN | Georgia | 2-7 |
| Iowa IA | Georgia | 2-7 |
| Kansas KS | Georgia | 2-7 |
| Kentucky KY | Georgia | 2-7 |
| Louisiana LA | Georgia | 2-7 |
| Maine ME | Georgia | 2-7 |
| Marshall Islands MH | Georgia | 2-7 |
| Maryland MD | Georgia | 2-7 |
| Massachusetts MA | Georgia | 2-7 |
| Michigan MI | Georgia | 2-7 |
| Minnesota MN | Georgia | 2-7 |
| Mississippi MS | Georgia | 2-7 |
| Missouri MO | Georgia | 2-7 |
| Montana MT | Georgia | 2-7 |
| Nebraska NE | Georgia | 2-7 |
| Nevada NV | Georgia | 2-7 |
| New Hampshire NH | Georgia | 2-7 |
| New Jersey NJ | Georgia | 2-7 |
| New Mexico NM | Georgia | 2-7 |



stamps.com

GET UP TO

$45

FREE POSTAGE!

### Quick Links

How long does it take to mail a letter to California?

What is the average time it takes to send a letter first class to New York?

How many days does it take to send a letter or package to Hawaii?

How long will it take to send a letter to Texas?

How many days does it take to send a letter to Florida?

How fast is the Post Office sending a letter to Maine?

What is the average time in transit for first class mail to Washington?

### Quick Links

How long does mail from California take to arrive?

How long does mail from New York take to arrive?

How long does mail from Florida take to arrive?

How long does mail from Texas take to arrive?

How long does mail from Pennsylvania take to arrive?

How long does mail from Georgia take to arrive?

How long does mail from New Jersey take to arrive?